IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**FELICIA JACKSON,**

                **Plaintiff,**

v.                                        Case 2:22-cv-02831-MSN-cgc

**YAZAKI NORTH AMERICA, INC.,**

                **Defendant.**

---

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court are the following motions: Defendant Yakazi North America, Incorporated's ("Yakazi") Motion for Summary Judgment (Docket Entry ("D.E.") #23); and, Plaintiff Felicia Jackson's ("Jackson") Motion for Summary Judgment (D.E. #24). Pursuant to Administrative Order 2013-05, the instant motions have been referred to the United States Magistrate Judge for Report and Recommendation.

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's purported Motion for Summary Judgment be administratively closed as it does not comply with the requirements for a motion as set forth in Local Rules 7.2 and 56.1.

    **I.**    **Introduction**

On December 7, 2022, Plaintiff filed a *pro se* Complaint with this Court pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. §§ 2000e, *et seq*. (D.E. #1). Plaintiff

alleges discrimination and retaliation on the basis of sex/gender (female). (Compl. ¶ 6). Specifically, she alleges that she was sexually harassed by both males and one female while employed by Yazaki and that, after she complained to human resources about these instances, she was "retaliated against and fired." (Compl. ¶ 10). She alleges that the alleged discriminatory act(s) occurred on September 16, 2022 and that they are not ongoing. (Compl. ¶¶ 7-8).

On April 10, 2024, Yazaki filed its Motion for Summary Judgment. Yazaki contends that Plaintiff's employment was terminated because she was abusing the company's complaint process which was resulting in disruption in the workplace. Yazaki further asserts that Plaintiff cannot establish either a *prima facie* case of hostile work environment or that she was terminated in retaliation for her complaints of sexual harassment.

On June 18, 2024, Plaintiff filed a document titled "Motion for Summary Judgment"; however, this document was filed after the dispositive motion deadline had passed (*see* D.E. #20, #21, #22), and it fails to comply with the requirements for motions for summary judgment as set forth in Local Rule 56.1. Namely, it does not contain a "separate, concise statement of the material facts," it does not support any such facts with a "specific citation to the record," and it does not include any evidence in support of any facts. Plaintiff's motion also contains no citations to the law as generally required to be considered as a motion. *See* Local Rule 7.2(a)(1).

Plaintiff's purported motion also does not comply with the requirements for a Response to Yazaki's Motion for Summary Judgment, as it was filed more than 28 days after Yazaki's motion was filed in violation of Local Rule 56.1(b) and as Plaintiff did not respond to Yazaki's Statement of Undisputed Material Fact in the manner mandated by Local Rule 56.1(b). Local Rule 56.1(d) provides that "[f]ailure to respond to a moving party's statement of material facts, or a non-moving

party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."

On August 13, 2024, Yazaki filed its Reply in support of its Motion for Summary Judgment. (D.E. #28). Yazaki asserts that, pursuant to Local Rule 56.1(d), its statement of undisputed material facts should be deemed as undisputed and its Motion for Summary Judgment should be granted.

## II. Proposed Findings of Fact

Jackson began her employment with Yazaki in June 2021. (Declaration of Jaime Urdangarin ("Urdangarin Decl."), filed at D.E. #23-2, at ¶ 6). She was employed as a Product Handler in Yazaki's distribution center in Memphis, Tennessee. (Urdangarin Decl. ¶ 6).

On September 29, 2021, Plaintiff reported to her supervisor that a temporary employee named Gregory Brown ("Brown") had spoken to her in a sexually inappropriate way. (Urdangarin Decl. ¶ 9; Transcript of Plaintiff's Deposition ("Pl's Dep.") at 26:23-34:7; Yazaki Investigation Plan & Report ("Sept. 29 Incident Report"), filed at D.E. #23-4, at PageID 155). Plaintiff's supervisor took written statements from both Jackson and Brown as well as from a third-party witness. (Urdangarin Decl. ¶ 8; Sept. 29 Incident Report at PageID 155). As a result of the investigation, Brown was released on that same day. (Urdangarin Decl. ¶¶ 9-10; Sept. 29 Incident Report at PageID 156).

On October 13, 2021, Plaintiff alleged that a temporary employee named Dre Jones ("Jones"), who was assigned to work at Yazaki, flirted with her, asked to come to her house to "Netflix and chill," and made other sexually explicit comments. (Urdangarin Decl. ¶ 11; Pl's Dep. at 34:10-47:16). Yazaki's human resources department investigated this complaint. (Yazaki

3

Investigation Plan & Report ("October 13 Incident Report"), filed at D.E. #23-5). Ultimately, human resources issued a letter of concern regarding the incident. (Urdangarin Decl. ¶ 14). Additionally, Plaintiff's supervisor was given a verbal warning for failing to intervene, her supervisor and team lead were required to go through "refresher" sexual harassment training, and Jones was disciplined by his employer, the temporary agency. (Urdangarin Decl. ¶¶ 14, 15). Yazaki instructed Plaintiff to immediately notify human resources if any other incidents occurred with Jones. (Urdangarin Decl. ¶ 16). Plaintiff's managers were also instructed to make their own reports to human resources if they noticed either Plaintiff or Jones initiating contact with one another. (Urdangarin Decl. ¶ 16). Following these remedial actions, Plaintiff did not file any additional complaints about Jones. (Urdangarin Decl. ¶17).

On November 19, 2021, Plaintiff filed a complaint containing two allegations against a fellow Yazaki employee named Shequnnica "Niki" Morgan ("Morgan"). (Urdangarin Decl. ¶ 18; Pl's Dep. at 48:9-58:5). Plaintiff accused Morgan of following her to and from the breakroom on November 12 and November 15. (Urdangarin Decl. ¶ 18). Plaintiff also stated that Morgan was perpetuating break-ins against Jackson's supervisor and other co-workers, even though Morgan was also a victim of the crimes. (Urdangarin Decl. ¶ 18). Yazaki investigated Jackson's complaints against Morgan but found no evidence to substantiate them. (Urdangarin Decl. ¶ 19).

On November 23, 2021, Plaintiff alleged that a Yazaki employee named Freda Ladd ("Ladd") made sexually explicit comments and intentionally cut her fanny pack. (Urdangarin Decl. ¶ 20; Pl's Dep. at 58:13-65:4). Yazaki's human resources department conducted a full investigation of these claims and found that they were unsubstantiated. (Urdangarin Decl. ¶ 21-22). Even so, Ladd received a verbal warning for the comment she made about touching, and she was required to attend "refresher" sexual harassment training. (Urdangarin Decl. ¶ 23).

4

Also on November 23, 2021, Plaintiff alleged that her manager, Justin Renfroe ("Renfroe") had been treating her "differently." (Urdangarin Decl. ¶ 24). Plaintiff based her complaint on the fact that Renfroe had changed the date of the safety meeting, but the date had been changed for the entire second shift and not just for Jackson. (Urdangarin Decl. ¶ 24). Yazaki's human resources department determined that the safety training had been scheduled by the safety trainer, who travels to provide training to all distribution centers for all second shift employees, and it had not been changed by Renfroe. (Urdangarin Decl. ¶ 25).

On an unspecified date during this time period, Plaintiff called the human resources headquarters in Canton, Michigan. (Urdangarin Decl. ¶ 26). She claimed to them that she was not receiving adequate support from local resources. (Urdangarin Decl. ¶ 26). In response to Plaintiff's complaint, they reached out to Plaintiff the same day to ensure that all of her concerns were addressed. (Urdangarin Decl. ¶ 26).

On January 20, 2022, Plaintiff reported to the senior supervisor of the second shift that she felt like she had been harassed by another individual named Harold Brown ("Brown"). (Urdangarin Decl. ¶ 28; Pl.'s Dep. at 65:5-68:24). Yazaki's human resources department conducted a thorough investigation of Jackson's January 20, 2022 complaint and found the allegations to be unsubstantiated. (Urdangarin Decl. ¶¶ 29-31).

As of January 25, 2022, Plaintiff had filed a number of unsubstantiated complaints including against someone in all but one department at the Memphis distribution center. (Urdangarin Decl. ¶¶ 32, 24). Yazaki investigated all of Plaintiff's complaints; however, only the first two were found to have had any merit. (Urdangarin Decl. ¶¶ 32-33). Yazaki determined that it would be difficult, if not impossible, to move Jackson away from "everyone she had a problem with" while still being able to meet operational business needs. (Urdangarin Decl. ¶¶ 34-35).

Accordingly, Jackson's employment was terminated on January 26, 2022. (Urdangarin Decl. ¶ 36). Her termination was reviewed by local human resources personnel, a human resources manager in Nashville, Tennessee, and by the human resources department in Canton, Michigan. (Urdangarin Decl. ¶ 36).

### III. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the

nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### IV. Proposed Analysis and Conclusions of Law

At the outset, the Court must begin with Plaintiff's own statement of her claim as set forth in her Complaint. She states that the alleged discriminatory acts of which she complained occurred on September 16, 2022 and that they are not still ongoing. However, there is no evidence in the record of any acts whatsoever that took place on September 16, 2022. In fact, Plaintiff's employment with Yazaki ceased nearly nine months earlier on January 26, 2022.

Even given this confusion, Plaintiff's Complaint does contend that she was unlawfully terminated on the basis of her gender/sex and that she experienced unlawful retaliation. Yazaki additionally construes Plaintiff's Complaint as raising a hostile work environment claim. The Court will consider these in turn.

### a. *Title VII Discrimination on the Basis of Gender/Sex*

Under Title VII, discrimination of the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of disparate treatment based upon race either by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 2000). To successfully pursue a direct-discrimination claim, the evidence must establish, *without any inferences or presumptions*, that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 59, 563 (6th Cir. 2000); *see also Brack v. Shoney's, Inc.,* 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003). If the plaintiff introduces evidence of an adverse employment action on the basis of his protected status, the burden of persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)).

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to determine if the conduct violated Title VII. First, a plaintiff must establish a prima facie case of discrimination, which requires as

8

follows: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

If plaintiff establishes the prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Here, there is no direct evidence that Plaintiff's termination was due to her gender/sex. Further, there is no evidence in the record as to how any similarly situated individuals were treated. Thus, Plaintiff cannot establish a *prima facie* case of circumstantial gender/sex-based discrimination. Accordingly, it is RECOMMENDED that Plaintiff's Title VII discrimination claim fails as a matter of law.

### b. Title VII Hostile Work Environment

Next, Yazaki construes Plaintiff's Complaint as raising a claim for hostile work environment. It is unclear to the Court whether or not she intends to raise this claim because, while she did allege in her EEOC Charge of Discrimination that she was "subjected to a sexually hostile work environment" and a "retaliatory hostile work environment," her Complaint does not mention

9

either of these causes of action. Instead, her Complaint states that she was "sexually harassed by males and a female" and then "retaliated and fired" "[d]ue to [her] complaints about it." (Compl. ¶ 10).

Even if this Court were to construe Plaintiff's Complaint as raising a claim for discriminatory or retaliatory hostile work environment, such a claim requires that the workplace be permeated with "intimidation, ridicule, or insult sufficiently severe or pervasive to alter the conditions of employment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65-67 (1986); *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332-35 (6th Cir. 332-335). Here, only two isolated incidents were substantiated following an investigation. The September 29, 2021 incident involving Gregory Brown was resolved on the same day with his temporary assignment to Yazaki ending. The October 13, 2021 incident resulted in a number of remedial steps being taken and no further complaints being made by Plaintiff against Dre Jones during her employment with Yazaki. The remaining instances were found not to be substantiated.

The law is clear that two isolated comments are insufficient to establish severe or pervasive harassment. *Sharqawi v. Kirby Co.*, 675 F. Supp. 3d 798, 831 (N.D. Ohio 2023); *Gibbs v. Voith Indus. Srvs., Inc.*, 60 F. Supp. 3d 780, 796-97 (E.D. Mich. 2014). Accordingly, it is RECOMMENDED that, to the extent Plaintiff's Complaint seeks to raise a claim for discriminatory hostile work environment and/or retaliatory hostile work environment, these claims fail as a matter of law.

### c. *Title VII Retaliation*

Title VII further provides that it is an unlawful employment practice for an employer to discriminate against any of its employees because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified,

10

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To establish a circumstantial case of Title VII retaliation, a plaintiff must first establish the following elements of the *prima facie* case: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known to the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and, (4) a causal connection existed between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 729-31 (6th Cir. 2014). If the plaintiff sets forth a *prima facie* showing, the burden shifts to the defendant to articulate some legitimate, non-retaliatory reason for its actions. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). If the defendant satisfies this burden, it shifts back to the plaintiff to demonstrate that the defendant's proffered reason was not the true reason for the employment decision. *Id*.

Here, even if Plaintiff were to be able to satisfy the *prima facie* case, Defendant has articulated a legitimate, non-discriminatory reason for its actions – namely, that Plaintiff had repeatedly filed complaints that they found to be unsubstantiated, that they eventually determined that her pattern of complaints was not in good faith, and that it had become difficult if not impossible to move Plaintiff away from everyone with whom she had been in conflict while still meeting operational business needs. Plaintiff has not brought forth any evidence to demonstrate that this was not the true reason for the employment decision. Accordingly, it is RECOMMENDED that her Title VII retaliation claim fails as a matter of law.

## V.    Conclusion

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED. It is further RECOMMENDED that Plaintiff's "Motion for Summary Judgment" is not a properly filed motion and should be administratively closed.

**SIGNED** this 26th day of August, 2024.

                                      s/ Charmiane G. Claxton
                                      CHARMIANE G. CLAXTON
                                      UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE SAID OBJECTIONS OR EXCEPTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF THE OPPORTUNITY TO RAISE OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**